Irene **SOBOCINSKI**, Plaintiff,

v.

Otis R. **BOWEN**, M.D., Secretary of Health and Human Services, Defendant.

No. 86 Civ. 6570 (KTD).

United States District Court, S.D. New York.

Oct. 14, 1987.

Blumenthal & Rubin, Hartsdale, N.Y., for plaintiff; Allan Rubin, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Donna H. Lieberman, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

The claimant, Irene Sobocinski, appeals from a decision of the Secretary of Health and Human Services (the "Secretary") denying her disability insurance benefits. The Secretary and Sobocinski each move for judgment on the pleadings. For the following reasons, the Secretary's motion is denied, and Sobocinski's motion is granted.

On January 28, 1985 Sobocinski filed an application for disability insurance benefits. Transcript of the Administrative Record ("Tr.") 35. Sobocinski's application was denied initially, tr. 43, and on reconsideration. Tr. 46. An administrative hearing was thereafter held in which the Administrative Law Judge ("ALJ") found the claimant not disabled. Tr. 6–11. This decision became the final decision of the Secretary when it was affirmed by the Appeals Council of the Social Security Administration on June 20, 1986. Tr. 2.

*Background and Medical History*

Sobocinski is a 53–year–old naturalized citizen. Tr. 70–71. She was born in Poland on May 9, 1932 and immigrated to the United States in 1957. Tr. 21–22. She received the equivalent of two years of college education while in Poland, tr. 22, and worked as an executive secretary in this country until she quit in 1983 allegedly because of back pain and hypertension. Tr. 22, 33.

Sobocinski began experiencing chronic, intermittent back pain in the early 1980's. Tr. 75, 83, 87, 91. At that time, she was under the care of Dr. John Lalli. On September 21, 1981, Sobocinski stopped work because of an aggravation of her back condition. Tr. 74. Dr. Lalli declared her unable to work and diagnosed: "[s]ciatic neuritis of the right lower extremity secondary to discogenic disease of lumbar 5–sacral 1." Tr. 74. He further stated that "her condition is chronic and the prognosis guarded." Tr. 74.

Dr. Rosenblum, a chiropractor who began treating Sobocinski in May 1982, also diagnosed acute sciatic neuralgia [1] with severe rotational malposition and degenerative joint disease at the L4 discspace. Tr. 83–84. Dr. Fill corroborated these opinions, diagnosing Sobocinski as having sciatic neuralgia hypertension. Tr. 87.

On November 25, 1986 Sobocinski was examined initially by her treating physician, Dr. Philip Bergman, to discuss the possibility of back surgery. Tr. 91–94. Dr. Bergman noted that claimant experienced pain on straight leg raising, that flexion extension of her ankle was weak, that there was tenderness at L3–L4 in midline and the right sciatic notch, that she limped, favoring her right leg, and that there was a loss of vibration sensations in her feet. Tr. 92. Dr. Bergman diagnosed a herniated disc at L4–5 and hypertension, and concluded that the claimant was unable to work, indicating that there had been no response to previous treatment. Tr. 94. This diagnosis was corroborated by an x-ray which showed questionable narrowing of the L5 interspace, suggestive of degenerative disc disease and a CT scan that showed a bulging anulus at L4–5 and degenerative changes at L5–S1. Tr. 93, 94.

---

1. Neuralgia is defined as "paroxysmal pain which extends along the course of one or more nerves."

Dr. Roy Ericksen was retained by the Secretary and examined Sobocinski in April, 1985. Tr. 75–82. He found that Sobocinski suffered from chronic low back pain syndrome and advised her to seek treatment as an out-patient at St. Luke's Hospital. Tr. 77.

At the hearing before the ALJ, Sobocinski testified that she was unable to work because of chronic low back pain which radiated into her right leg, numbness in both feet, and headaches caused by her hypertension. Tr. 22, 23. She further testified that she could stand for only five minutes, sit for only fifteen minutes and walk, at the most, three blocks. She testified that she could neither bend over, climb stairs, nor lift heavy objects without pain. Tr. 24, 25. Sobocinski was unable to drive, use the subway, or ride the bus. Friends assisted with her housework and shopping, although she was able to do light cooking. Tr. 25, 26. Sobocinski testified that she spent most of her time reading or watching T.V. because she could do these activities while lying down. Tr. 27.

Sobocinski did not seek medical treatment for a period after 1982 after she had tried numerous forms of treatment, including acupuncture and manipulation, but "nothing helped". Tr. 29, 30.

Sobocinski's condition caused her to refrain from work from April 1981 until January 1983 at which time she began working again. In August 1983, however, she was fired because of poor work performance and poor attendance resulting from her back pain and hypertension. Tr. 22.

*Discussion*

Under 42 U.S.C. § 423(d)(1)(A) (1982), Sobocinski, in order to qualify for disability benefits, must show her

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

Further, Sobocinski has the burden of proving that she is disabled within the meaning of the act. 42 U.S.C. § 423(d)(5) (1982);

*Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir. 1983). An ALJ's determination that this burden has not been met is conclusive if supported by substantial evidence, provided that the Secretary has applied the proper legal standard. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Gold v. Secretary of HEW,* 463 F.2d 38, 42 (2d Cir.1972).

Substantial evidence means "more than a mere scintilla" and is defined as "such relevant evidence as a reasonable man might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Thus, it is not the function of the reviewing court to make a *de novo* determination. Rather, the scope of judicial review is limited to an assessment of the sufficiency of evidence in support of the ALJ's decision. *Parker v. Harris,* 626 F.2d at 231.

In the instant case, the ALJ found that although Sobocinski suffered from both a spinal impairment and hypertension, she retained the residual capacity to perform her past work as a secretary. The ALJ's determination is based on an erroneous application of the "treating physician's rule."

Initially, it should be noted that there is no requirement that a treating physician's testimony be supported by objective tests or findings. *Bluvband v. Heckler,* 730 F.2d 886, 893 (2d Cir.1984).

> Because even a conclusory report by a treating physician presumably rests upon encapsulated experience with the subject, the ALJ may not reject or discount his or her summary report without first informing the claimant of this proposed action and providing the claimant an opportunity to submit a more detailed statement.

*Ceballos v. Bowen,* 649 F.Supp. 693, 700 (S.D.N.Y.1986).

With the onset of her back problems Sobocinski saw several treating physicians.

58

She was under the care of Dr. Lalli, twice a week, from April 16, 1981 until April 2, 1982. Tr. 74. She was also treated by Dr. Fill from March 12, 1982, until October 8, 1982. Tr. 87. Although Dr. Lalli submitted only a conclusory report indicating his diagnosis of Sobocinski, the ALJ acted erroneously by disregarding it because it was "not supported by x-ray reports or other clinical data." Tr. 9.

Both Dr. Lalli and Dr. Fill diagnosed Sobocinski as suffering from sciatic neuritis. Tr. 74, 87. Moreover, the ALJ wrongfully discredited Dr. Lalli's statement that claimant's back problem was "chronic" and that it was "unlikely ... [she] [could] seek gainful employment." Tr. 74.

 Dr. Eriksen, who performed a consultative evaluation of Sobocinski on behalf of the Secretary, did not contradict Dr. Lalli's evaluation of her inability to seek gainful employment. Eriksen stated that the lumbosacral spine was normal, tr. 77, although an x-ray taken the same day as Eriksen's examination showed degenerative disc disease. Tr. 82. Eriksen diagnosed chronic low back pain syndrome, and recommended that the claimant receive outpatient care. Tr. 77. Eriksen gave no opinion of claimant's ability or inability to work. Absent substantial contradictory evidence, a treating physician's diagnosis is binding on the fact-finder. *Hidalgo v. Bowen*, 822 F.2d 294, 297–98 (2d Cir.1987). Thus, the ALJ was bound by Dr. Lalli's findings from which one can only conclude that Sobocinski was unable to work.

Dr. Bergman, presently Sobocinski's treating physician, diagnosed a "herniated disc at L4–5," Tr. 94. Contrary to the ALJ's finding—that "at most, [Dr. Bergman expressed] a wish for [Sobocinski] to refrain from physically taxing herself while the medical investigation of her back problem continued", tr. 9—Dr. Bergman stated that she was "unable to work." Tr. 94.

While noting that Sobocinski had seen Dr. Bergman only once by the date of the hearing, the ALJ failed to similarly discredit Dr. Eriksen's findings for precisely the same reason. Rather, the ALJ appears to have relied exclusively on the general data

obtained from Eriksen's examination in holding that Sobocinski was capable of performing her past work. As already noted, however, Eriksen made no findings as to her residual work ability. Nor can any inferences drawn from Eriksen's general findings amount to substantial evidence in contradiction of her treating physicians' opinions. Because Sobocinski's treating physicians found that she was unable to work, and their findings were not contradicted by substantial evidence, those findings were binding on the ALJ under the treating physician's rule.

Because the ALJ's determination that Sobocinski can perform her past work as a secretary is not supported by substantial evidence, the case must be remanded for a determination of whether the claimant is capable of performing "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (1982 & Supp. III 1985). The instant action is dismissed subject to re-opening by either party within a reasonable time following further proceedings by the Secretary.

SO ORDERED.